**Donald D. SNYDER III and Fred E. Fowlers, Jr., Plaintiffs,**

v.

**NEWHARD, COOK & CO., INC., Richard M. Longsdorf, Harry W. Newhard, Calvin B. Agee, William B. Nicklin, Donald Carlsen and Douglas V. Martin III, Defendants.**

Civ. A. No. 88–K–1440.

United States District Court, D. Colorado.

May 16, 1991.

Ronald W. Gibbs, Younge & Hockensmith, P.C., Grand Junction, Colo., for plaintiffs.

Terry L. Lister, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., Thomas D. Birge, Brega & Winters, Denver, Colo., and Alan Jacobson, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Before me is defendants' motion to dismiss plaintiffs' eleventh and part of their twelfth claims for relief. According to the defendants, these claims are improper because they are founded on securities law sections for which there is no private cause of action. In addition, defendants' maintain several portions of plaintiffs' claims are time barred by statutes of limitation.

## I.

This securities action arose after the plaintiffs lost a significant amount of money trading stock option contracts. In 1987, plaintiffs committed to an investment strategy proposed by defendant, Richard Longsdorf, a broker with Newhard, Cook. The broker, brokerage house, and brokerage house managers are all defendants in this action. The strategy, involved what Longsdorf called "insured straddle" stock option positions. According to the plaintiffs, Longsdorf explained the strategy was conservative as to risk, and no more than $10,000 was exposed to loss.

Defendants argue the plaintiffs were sophisticated investors fully informed of the risks of trading index options. Each plaintiff received a written option prospectus containing a full disclosure of such risks. Finally, defendants argue the real cause behind the plaintiffs' loss is the spectacular market crash which occurred in October, 1987 colloquially known as "Black Monday."

Plaintiffs' original complaint contained a variety of statutory and common law theories of recovery. Presently, the case involves only federal securities law violations under the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (1981), and the Securities Exchange Act of 1934, 15 U.S.C. 78a *et seq.* (1981). In a February 8, 1989 order, Judge Babcock of this court applied an arbitration clause in paragraph 15 of the customer's agreement submitting all but the securities law claims to arbitration.

On January 8, 1990, plaintiffs amended their complaint to add new parties and theories for recovery. Currently, the complaint alleges: securities fraud under §§ 12(2) and 17(a) of the '33 Act and §§ 10, 15 and rule 10(b)–5 of the '34 Act; registration violations under § 12(1) of the '33 Act; control person liability under § 15 of the '33 Act and § 20 of the '34 Act; and aiding and abetting primary securities law violations.

In response, defendants move to dismiss portions of the amended complaint. Without directing the court to specific provisions of the Federal Rules of Civil Procedure, defendants move to dismiss half of plaintiffs' eleventh and all of their twelfth claims for relief. Generally, defendants assert plaintiffs' failure to state a claim upon which relief can be granted. Specifically, defendants assert: (1) section 15(b)(4)(E) of the '34 Act does not provide a private cause of action; (2) sections 17(a) of the '33 Act and § 15(c) of the '34 Act do not provide a private cause of action; and (3) the applicable statute of limitations invalidates plaintiffs' control person liability claim.

## II.

A liberal construction of the federal rules permits me to treat all of these issues as a single motion to dismiss under FRCP 12(b)(6).

> [I]n practice, the preliminary motion practice in the federal courts has a much broader compass. For example, although affirmative defenses under Rule 8(c) probably were intended to be raised only by responsive pleading, it is now common to allow an affirmative defense to be asserted by a motion under Rule 12(b)(6) when the validity of the defense is apparent from the face of the pleading.

Wright & Miller, *Federal Practice and Procedure:* Civil 2d § 1349 (1990). As a 12(b) motion to dismiss, the motion will fail if plaintiffs can "prove any set of facts in support of their [securities law] claim[s] which would entitle them to relief." *Johansen v. City of Bartlesville, Okl.,* 862 F.2d 1423, 1427 (10th Cir.1988) (citing: *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## III. Claim Twelve: Aiding and Abetting Securities Law Violations

In its amended complaint, plaintiffs name several additional parties. Each is an individual with authority at Newhard, Cook. According to the plaintiffs, the added defendants knew, should have known or were reckless in not discovering the alleged violations which injured the plaintiffs. All of the defendants failed to supervise properly the option trades conducted by broker, Longsdorf, on the plaintiffs' accounts.

Also, the lack of written policies and procedures at Newhard, Cook substantially assisted in these violations. From these allegations, plaintiffs charge the defendants with aiding and abetting primary violations of the securities laws.

Defendants respond by correctly pointing out that plaintiffs' twelfth claim is grounded on a '34 act provision which does not allow a private cause of action. Paragraph 162 of plaintiffs' amended complaint alleges a violation of § 15(b)(4)(E) of the '34 Act. But § 15(b)(4) begins, "The *Commission*, by order shall censure ..." The plain language of the section reserves enforcement of subsection (b)(4)(E) to the SEC. *See SEC v. Seaboard Corp. (Admiralty Fund v. Hugh Johnson & Co. Inc.)*, 677 F.2d 1301, 1313 (9th Cir.1982).

This, however, does not end the inquiry. Although aider and abettor liability is not a statutory private action under § 15 of the Exchange Act, many courts recognize a claim of secondary liability against those who aid and abet primary securities violations. Judge Friendly in *IIT, Intern. Investment Trust v. Cornfeld*, 619 F.2d 909, 922 (2nd Cir.1980) set out three prerequisites:

1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party;

2) "knowledge" of this violation on the part of the aider and abettor; and

3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

*Accord In re Storage Technology Corp. Securities Litigation*, 630 F.Supp. 1072, 1076 (D.Colo.1986). Hence, aider and abettor liability is a recognized cause of action. Plaintiffs properly allege securities law violations were committed by Longsdorf, a primary party. They also plead sufficient facts that the added defendants substantially assisted in the violations. Hence, the claim survives the motion to dismiss.

In their reply brief, defendants argue the aider and abettor claim is a common law action. Under Judge Babcock's February 8 and June 27 Orders, common

law actions must be referred to arbitration. I reject this argument. The parties agreed "[a]rbitration cannot be compelled with respect to disputes arising under the federal securities laws." (Order, June 27, 1989 at 2). Aiding and abetting securities law violations is a dispute under federal securities law. The gravamen of the claim is a primary violation of securities law, and the cause of action is recognized by the court. The absence of an express private cause of action does not change the nature of the claim. Accordingly, defendant's motion to dismiss claim twelve is denied.

## IV. Claim Eleven: Control Person Liability

Citing § 15 of the '33 Act and § 20 of the '34 Act, plaintiffs bring their eleventh claim for relief on the theory of control person liability. The sections from both Acts are similar in scope. Control person liability holds responsible those in control of individuals who violate securities law. According to the plaintiffs, the added defendants in control at Newhard, Cook are jointly liable for the primary violations of Longsdorf. Those sections violated include §§ 12(1), 12(2) and 17(a) of the '33 Act and §§ 10, 15 and rule 10(b)–5 of the '34 Act.

Defendants argue secondary liability requires a primary violation of a securities law. Because plaintiff's control person liability is based on securities law violations for which there is no private enforcement action, defendants move for dismissal. Defendants object to plaintiffs' claims under § 17(a) of the '33 Act and § 15(c) of the '34 Act; they argue the sections are not enforced privately. Although defendants only object to these sections as they appear in plaintiffs' eleventh claim for relief, the second and third claims from the earlier complaint also rely on these sections. Hence, I will decide whether § 17(a) of the '33 Act and § 15(c) of the '34 Act permit private enforcement, and my decision will control claims under these sections throughout the complaint.

The two regulatory schemes controlling the issue and exchange of securities are often cumulative. Express rights of ac-

tions with specific remedies and standards of proof are traded for all encompassing anti-fraud provisions with great regularity. Ultimately, whether a provision contains the implied right of private enforcement depends on the intent of Congress. The Supreme Court in *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979) identified several subjects to consider. I will examine the "language and focus of the statute, its legislative history and its purpose." *See Cort v. Ash*, 422 U.S. 66, 81–83, 95 S.Ct. 2080, 2089–90, 45 L.Ed.2d 26 (1975).

■ By examining § 17(a) in the context of the entire 1933 Act, I conclude—in accord with other decisions of this district—there is no private enforcement action under § 17(a). The '33 Act is more narrow than the '34 Act in that it deals only with the sale of securities. Sections 5 and 17 contain the thrust of the Act. Non-compliance with the registration provisions results in civil liability under § 12(1). The remedial analogue to § 17 is § 11 and § 12(2): a private right of action for buyers.

The sense of symmetry between the prohibitions contained in § 17 and the remedial provisions of §§ 11 and 12(2) is defeated by private actions under § 17. The detailed discussions in §§ 11 and 12(2) about who is liable at what level of participation and whether that person is entitled to a due diligence defense is ignored by private access to § 17(a).

Other incongruities exist when a private action under § 17 is compared to § 10(b) of the '34 Act. In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) the Supreme Court, by requiring proof of scienter, eliminated § 10(b) as a remedy for negligent conduct. Conversely, in *Aaron v. SEC*, 446 U.S. 680, 695–97, 100 S.Ct. 1945, 1955–56, 64 L.Ed.2d 611 (1980), an action by the SEC, the Court required proof of scienter only in § 17(a)(1). Sections 17(a)(2) and (3) simply require proof of negligence. Hence, § 17 claims

encompass more activity and are properly reserved for public proceedings.

Finally, § 15—at issue here—permits control person liability for violations of §§ 11 and 12 without mentioning liability for violations of § 17. This fact underscores the view that private enforcement actions should not be implied to exist in § 17(a). *See* Loss, *Fundamentals of Securities Regulation 2d*, ch. 10(H)(4)(c) (1988). *Accord In re Storage Technology*, 630 F.Supp. at 1079–80; *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 472 F.Supp. 402, 404 n. 3 (D.Colo.1979) *aff'd* 651 F.2d 687 (10th Cir.1981). *Contra Richey v. Westinghouse Credit Corp.*, 667 F.Supp. 752, 756–57 (W.D.Okl.1986).

■ The suspect provision of plaintiffs' '34 Act claim is § 15(c);[1] the parties dispute whether there is a private cause of action under the section. The analysis is the same. The text does not name a specific party who may enforce the provision. The parties do not present nor have I uncovered legislative history which supports plaintiffs' claim to a private action. Finally, nothing from the structure or purpose of the section indicates Congress intended private enforcement of § 15(c) and none will be implied.

Although plaintiffs are within the class of people § 15(c) is designed to protect, a private right of action would not add anything to enforcing anti-fraud provisions. As explained earlier, § 10(b) of the '34 Act is an all-encompassing remedy for fraud arising from the purchase and sale of securities. Any action under § 15 also lies under § 10(b). Rule 10(b)–5 is the primary vehicle for securities fraud actions, and the Supreme Court has frequently articulated the parameters of its use. I recognize remedies for securities law violation are often cumulative. "The fact that there may well be some overlap is neither unusual nor unfortunate." *SEC v. National Securities, Inc.*, 393 U.S. 453, 468, 89 S.Ct. 564, 573, 21 L.Ed.2d 668 (1969). But before I will imply a private cause of action under

---

1. Plaintiffs' complaint simply refers to all of 15 U.S.C. § 78*o* without naming a specific provision within the section. Since its response to defendants' motion refers to § 15(c), I will treat plaintiff's § 15 claim as a claim under § 15(c).

§ 15, the plaintiff must show some benefit a private action will contribute.

The best analysis the parties offer on this issue is a list of cases which either imply or refuse to imply a private action. The cases cited by the plaintiffs are unpersuasive. The quoted portion plaintiffs claim to be from *Speck v. Oppenheimer*, 583 F.Supp. 325, (W.D.Mo.1984)[2] simply states the conduct prohibited by § 15(c) is also prohibited by § 10(b). Since private actions are implied by § 10(b), there is no reason not to imply them under § 15(c). I take the opposite approach.

Private anti-fraud actions should be limited to § 10(b) unless another section reaches situations or conduct not covered by rule 10(b)–5. Section 10(b) has been litigated and its requirements are well known. The section continues to evolve as courts better understand the economics of the securities market. Implying a new, untested cause of action creates more confusion and repetition in a field of law not known for its clarity. Recognizing a cause of action simply because Congress did not prohibit it seems pointless.

The two other cases cited by the plaintiffs are distinguishable. *In re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. 493, 506–07 (S.D.N.Y.1987) employs the same logic I reject: rule 10(b) and § 17(a) prohibit the same conduct; therefore, a private action is allowed in both. *Opper v. Hancock Securities Corp.*, 367 F.2d 157 (2nd Cir.1966) was decided more than a decade before *Cort v. Ash* and *Touche Ross v. Redington* and has uniformly not been followed. *See SEC v. Seaboard Corp. (Admirälty Fund v. Hugh Johnson & Co. Inc.)*, 677 F.2d at 1314 n. 16; *Roberts v. Smith Barney, Harris, Upham & Co., Inc.*, 653 F.Supp. 406, 413–15 (D.Mass.1986); *Baum v. Phillips, Appel & Walden, Inc.*, 648 F.Supp. 1518, 1528–29 (S.D.N.Y.1986), *aff'd sub nom., Asch v. Phillips, Appel & Walden, Inc.*, 867 F.2d 776 (2nd Cir.1989).

Plaintiffs' claims under § 17(a) of the '33 Act and § 15(c) of the '34 Act are dismissed. Hence, defendants' motion to dismiss claim eleven is granted in part. Part of plaintiffs' control person liability claim, however, survives. Plaintiffs maintain claims for primary securities law violations under §§ 12(1) and 12(2) of the '33 Act and §§ 10, 15 and rule 10(b)–5 of the '34 Act. Plaintiffs' eleventh claim for secondary control person liability will proceed based on violations of these sections.

V. Statute of Limitations: Control Person Liability for Violations of § 12(1) of the '33 Act

Section 12(1) of the '33 Act assesses liability for selling securities in violation of the registration requirements. The alleged unregistered security purchased by the plaintiffs, was "the combination of stock index options, which were represented to the Plaintiffs as 'insured' but in fact were combinations of unhedged, naked stock index options," (Pl.'s April 18, 1990 Response at 8).

The statute of limitations for § 12 claims is set out in § 13 of the '33 Act.

No action shall be maintained to enforce any liability created under section 11 or section 12(2) unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce liability created under section 12(1), unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 11 or section 12(1) more than three years after the security was bona fide offered to the public, or under section 12(2) more than three years after the sale.

15 U.S.C. § 77m (1981). The operative time period for § 12(1) claims is one year from the time the violation occurred, or three years from the date the security was offered to the public. The violation to which

---

**2.** I read the case plaintiffs cite and it makes no reference to the passage or issues plaintiffs quote. Unfortunately, this is not the only example of careless drafting in the papers the plaintiffs filed. Plaintiffs are advised such practices will not be tolerated in the future.

plaintiffs refer occurred in October, 1987: the date of the actual sale. Defendants argue the time period began when the trading strategy was proposed or offered in November, 1986.

Since this is a 12(b) motion, I examine the dispute with an eye towards any set of facts which could support the plaintiffs' claim. While November 1986 could be the operative date when the violation occurred, I accept the October, 1987 date for the purpose of this motion. Hence, the three year statute of limitations period, from the time the security "was offered to the public," was not exceeded.

■ The one year limitation period was triggered when the defendants sold what could be unregistered securities; this is the primary securities law violation for which the control persons are liable. Any secondary liability claim for a violation of § 12(1) must be brought within the same time period which governs the primary violation, *Herm v. Stafford,* 663 F.2d 669, 679 (6th Cir.1981). Plaintiffs did not bring their action naming the control persons as defendants until they amended their complaint on January 8, 1990.[3] The claim, therefore, appears untimely.

To save their claims against the added defendants, plaintiffs raise the issue of equitable tolling of statutes of limitations. In *Ohio v. Peterson, Lowry, Rall, Barber & Ross,* 651 F.2d 687 (10th Cir.1981), *cert. denied,* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981), the court discussed equitable tolling in the context of securities litigation. "Federal equitable tolling provides that when a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered,'" *Id.,* at 692 (citing *Baily v. Glover,* 88 U.S. 342, 22 L.Ed. 636 (1874)). In *Holberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946), the Court explained the plaintiff's ignorance must be caused by fraudulent concealment of material information by the defendant.

■ According to the plaintiffs, they did not discover the added defendants had substantially "assisted and controlled" the primary securities law violations until their October 11, 1989 depositions. Before this date, defendants objected to producing any internal policy or procedure manuals and moved for protective orders to prevent their disclosure. Even if I construe this delay as "fraudulent concealment," plaintiff's equitable tolling argument fails. For the following three reasons, I conclude equitable tolling is inapplicable to § 12(1) claims.

First, § 13 differentiates between § 12(1) and § 12(2) claims. For § 12(2) claims, the start of the time period is flexible and depends on the discovery of the misstatement. For § 12(1) claims, however, the "one year after the violations upon which it is based" period is absolute. When the two provisions are compared, the language of § 13 excludes application of equitable tolling for § 12(1) claims.

Second, § 12(1) violations are easily uncovered. Whether a security is registered is a matter of public record. Plaintiffs had ample opportunity to determine whether the security was registered and who should have participated in the registration process. Plaintiffs' argument that they were prevented from knowing the extent to which persons are secondarily liable makes little sense. Information on the pecking order at Newhard, Cook is obtainable through many sources. But knowledge about the specific involvement of each defendant is unnecessary for § 12(1) claims because sellers are liable whether they acted "directly or indirectly" in registration violations. Likewise, their argument that time was lost while the parties litigated the arbitration clause is unpersuasive. The kind of information needed to inform a § 12(1) claim need not be obtained through discovery. *See Ohio,* 651 F.2d at 695 n. 17.

■ Finally, plaintiffs' concealment claim to support their equitable tolling argument is superfluous. The one year limi-

---

**3.** The parties do not argue, nor do I consider, whether the amended complaint could relate

back to the original filing of the complaint which occurred in September, 1988.

tation period for § 12(1) claims focusses on when the violation occurred. It does not matter when the buyer learned of the violation. Hence, any argument by the buyer that information was concealed from him is irrelevant. The plaintiffs' § 12(1) claim against the added defendants is dismissed. *Accord In re Rexplore Inc. Securities Litigation,* 671 F.Supp. 679, 687 (N.D.Cal. 1987); *Richey v. Westinghouse Corp.,* 667 F.Supp. 752, 753–55 (W.D.Okl.1986).

### VI. Statute of Limitations: Control Person Liability for Violations of § 12(2) of the '33 Act

■ Section 12(2) of the '33 Act addresses all other forms of materially incorrect or misleading selling literature and oral communications in the sale of a security. The applicable statute of limitations period is one year from the actual discovery of the misleading statement or from when the misleading statement should have been discovered. In no event may the action commence more than three years after the sale of the security.

According to plaintiffs, the sale occurred in October, 1987. Hence, any § 12(2) claim must be brought before October, 1990. The three year provision is not at issue. The one year limitation, however, is disputed. The one year period begins when the misstatement was or should have been discovered. The issue is when did they discover the violations, and did the plaintiffs act within the one year limit? Defendants argue the plaintiffs knew of the misstatements at least by the date they filed their original complaint. The filing occurred in September, 1988. Since the additional defendants were not named until January, 1990, the claim is late. Plaintiffs again argue the limitations period should be tolled.

■ I accept the application of equitable tolling for § 12(2) claims, with a condition that the claim cannot survive beyond the three year outside limit established by § 13. I adopt Judge Easterbrook's reasoning in *Short v. Belleville Shoe Manufac. Co.,* 908 F.2d 1385, 1391 (7th Cir.1990), *cert. filed,* No. 90–526 (Sept.

26, 1990). Consider the following example: a security is sold on January 1, 1990 and included in the sale is a misleading statement. On June 1, a diligent investor should have discovered the misstatement. The seller, however, conceals the mistake. The one year period is now tolled. Instead of expiring on June 1, 1991, the investor has up to one and one half years as a grace period.

Equitable tolling, however, cannot extend a § 12(2) claim beyond the three year limitation expressed in § 13. Congress prefaces the three year limitation with the statement: "In no event shall any such action be brought" after three years. An earlier version of the '33 Act contained a longer limitations period. Congress, in the '34 Act, chose to shorten the time limit. *See* J.S. Ellenberger & Ellen P. Mahar, 6 *Legislative History of the Securities Act of 1933 and Securities Exchange Act of 1934,* 6565–66, 6718, 6993 (1973) and 7 *id.* at 7743–44.

Congress' two year cap on tolling principles is necessary "in order to curtail the extent to which the securities laws permit recoveries based on the wisdom given by hindsight," *Short,* 908 F.2d at 1392. General equitable tolling of federal statutes of limitations must be modified to fit the volatile nature of the securities field.

Securities markets rely heavily on private litigants to enforce the laws. There must be incentives to investigate rather than merely accept the word of brokers. Short limitations of actions create these incentives. Unlimited tolling allows an investor, armed with possibly false information from his broker, to sit on the sidelines and watch. In this case, had Black Monday never occurred and the plaintiffs' investments turned a profit, they would sit on their hands and wait, while potential fraud went unnoticed. If the market declines, they scrutinize the statements their broker in search of a claim. This would truly be the "insured investment straddle" the plaintiffs describe in their complaint.

Plaintiffs argue they did not know about the involvement or lack of supervision of the control persons until discovery had

commenced. Until this time, plaintiffs maintain the added defendants withheld or concealed material information. According to the plaintiffs, "Had the defendants revealed the total lack of any policy and procedures manuals, the Defendants [sic] could have moved to amend their complaint to join those persons ... at an earlier time," (Pls.' response at 11).

■■■ Plaintiffs misstate their burden when invoking the equitable tolling doctrine. The doctrine is actually a response to the affirmative defense of a statute of limitations violation. To prevail, the plaintiffs must prove affirmative conduct of concealment by the culpable defendant which would lead a reasonable person to believe he had no claim. *Erickson v. Kiddie*, [Current] Fed.Sec.L.Rep. para. 92,889, 94,949, 1986 WL 544 (N.D.Cal.1986); *In re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. 493, 507 (S.D.N.Y.1987) (citing *Competitive Associates, Inc. v. Fantastic Fudge*, 58 F.R.D. 121, 123 (S.D.N.Y.1973)). Absent clear allegations of fraud, conscious deception or bad faith, equitable tolling may not be invoked.

Plaintiffs' amended complaint, in paragraph 172, contains only the conclusory statement that they didn't know nor could have learned of the defendants conduct. Nowhere are there facts indicating fraud. In their response to defendants' motion to dismiss, plaintiffs point to defendants' recalcitrant attitude towards disclosing internal policy manuals, delays in discovery, and protracted disputes over arbitration. Even if I construe these facts as part of their complaint, they are insufficient to demonstrate fraud. "The facts demonstrating plaintiffs' excusable failure to discover the claim must be pled with 'at least some particularity,'" *In re Rexplore, Inc. Securities Litigation*, 671 F.Supp. 679 (N.D.Cal. 1987)) (citation omitted).

■■■ Plaintiffs argue they did not know enough to name faithfully the added defendants while keeping within the requirements of FRCP 11. Simply, plaintiffs did not know enough about the internal workings of Newhard, Cook to allege the added defendants knew of their broker's misstate-

ments. Noble as this may sound, the argument fails. Control person liability, defined in § 15, reaches any one who "controls" the person accused of the primary violation. Control is shown by a number of ways. To maintain a claim of control person liability, the plaintiffs need not show the control person had knowledge.

Knowledge of the primary violation is only discussed toward the end of § 15. The lack of "knowledge" or "reasonable belief" is a defense which the control person asserts to escape liability. Hence, plaintiffs need not have discovered culpable knowledge before naming the additional defendants. Absent affirmative facts showing fraudulent concealment, the doctrine of equitable tolling may not be invoked and the plaintiffs § 12(2) claim against the added defendants is untimely.

Accordingly,

IT IS ORDERED Defendant's motion to dismiss is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED all claims grounded on violations of § 17(a) of the '33 Act and § 15(c) of the '34 Act are DISMISSED whether they appear in the plaintiff's complaint or amended complaint.

IT IS FURTHER ORDERED plaintiffs' control person liability claim grounded on a violation of § 12(1) of the '33 Act was brought over a year after the violation occurred and is DISMISSED.

IT IS FURTHER ORDERED plaintiffs' control person liability claim grounded on a violation of § 12(2) of the '33 Act was brought over a year after plaintiffs should have known of the misstatements and is DISMISSED.

IT IS FURTHER ORDERED defendants' motion to dismiss plaintiffs' twelfth claim for relief is DENIED.