A. Rex GARDNER, David Lundskog, General John S. Samules, Joan Thalman, Judy Mora, A. Jay De La Mare, Dale Baker, David Komatz, Komatz Joint Account, a Colorado general partnership, and Univex International, a Colorado corporation, Plaintiffs,

v.

INVESTORS DIVERSIFIED CAPITAL, INC., Samuel Sisk, Edward Duggan and Don Urben, et al., and Cordovano & Company, P.C., and Sam Cordovano, and David Wagner & Associates, P.C., and David Wagner, Defendants.

Civ. A. No. 92–K–1323.

United States District Court, D. Colorado.

Nov. 6, 1992.

Raul N. Rodriguez, for plaintiffs.

J. Lawrence Hamil, Susan Bernhardt, Richard G. McManus, Jr., William P. Denious, for defendants.

## MEMORANDUM OPINION
## AND ORDER

KANE, Senior District Judge.

This securities fraud case is before me on the defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The amended complaint purports to allege violations of sections 5(a), 5(c), 12(1) and 12(2) of the Securities Act of 1933, together with violations of section 10(b) and rule 10b–5 of the 1934 Securities Exchange Act, and a multiplicity of state law violations. It is replete with misspellings, grammatical aberrations, non sequiturs and solecisms.[1] Jurisdiction is asserted by virtue of 28 U.S.C. §§ 1331, 1332, 15 U.S.C. § 77v(a) and 15 U.S.C. § 78aa.

The defendants claim that the plaintiffs, individual and institutional stockholders in Investors Diversified Capital, Inc., ("IDCI"), have failed to plead the security fraud counts with sufficient particularity to satisfy Fed.R.Civ.P. 9, have failed to allege timely violations of § 12(1), and have failed to tender the securities as § 12(2) requires for the remedy of rescission. They accordingly urge me to dismiss all the federal claims together with the state claims here by dint of supplemental jurisdiction. I find the complaint to be wholly without merit and therefore dismiss it without leave to amend.

### I. Facts and Procedural History

Plaintiffs originally filed this action on June 30, 1992. Among the original plaintiffs was Recovery, Inc., a Colorado nonprofit corporation formed to "pursue individual causes of action for the various alleged violations of the federal securities statutes." Complaint at 1. With the complaint plaintiffs moved for a temporary restraining order, a preliminary injunction, and a temporary receiver. By minute order, I denied the motion for temporary restraining order and set the matter for hearing on the motion for preliminary injunction for July 17, 1992. On that date the defendants moved orally to dismiss the complaint for lack of standing. They asserted that Recovery, Inc. had no standing to pursue this case because it was not a purchaser of securities within the meaning of the various securities statutes. I agreed and dismissed the complaint, with leave to file an amended complaint.

Plaintiffs filed an amended complaint on August 6, 1992. Most of the defendants have moved to dismiss it under rule 12(b)(5).[2] I accordingly accept as true, arguendo, the following allegations from that complaint.

### A. The Amended Complaint's Allegations

The plaintiffs purchased slightly more than a million shares of stock in IDCI between 1989 and 1992 for approximately $300,000. IDCI is a Colorado corporation incorporated in February 1989. Its purpose was to develop and market a line of silicone-based sealant products. Defendants Samuel Sisk, Edward Duggan and Don Urben ("Sisk", "Duggan" and "Urben" respectively) were all connected in some fashion to IDCI. The amended complaint does not describe their exact roles and functions within IDCI except to say that Duggan was an officer and director of IDCI with prior experience in the chemical industry and that Sisk and he started marketing a sealant in 1989, both individually and through IDCI. I know even less about Urben. The amended complaint says that he purchased Duggan's stock when Duggan resigned from IDCI in October, 1991. Amended Complaint at ¶ 72. It also alleges that he and Sisk were both controlling shareholders and directors in IDCI. Amended Complaint at ¶ 27. The Amended complaint asserts securities fraud claims against Duggan, Sisk and Urben in counts 1, 2, and 3.

David Wagner ("Wagner") is a lawyer who apparently acted as corporate counsel to IDCI in 1989 when IDCI attempted to merge with a Canadian shell corporation named Riverton Resources Corp. The un-

---

1. The most extreme example is found in plaintiff's response to the motions to dismiss: "Exercise of pendant jurisdiction is within trial courts [sic] desecration [sic]."

2. ICDI has made no answer to the complaint or otherwise joined in the motions to dismiss. Nor have the defendants identified only as "et al." in the amended complaint's caption.

successful merger would have allowed IDCI access to the Vancouver Trading Exchange. IDCI later retained Wagner in February, 1991, to prepare the necessary documents for an intrastate securities offering under Colorado law.

Sam Cordovano ("Cordovano") is a certified public accountant. He prepared a financial audit of IDCI in May, 1990 to help in the merger negotiations with Riverton Resources Corp. He also was hired to perform whatever audits were necessary in connection with the 1991 Colorado state offering. The amended complaint seeks damages against Wagner and Cordovano as aiders and abettors under section 10(b) of the Exchange Act and rule 10b–5.

The amended complaint lists nine individuals and one Colorado general partnership as plaintiffs. As originally filed, the amended complaint identified one plaintiff as "Ellen Miller." By a "correction to amended complaint" plaintiffs asked me, on August 6, 1992, to remove Ms. Miller from the caption and replace her with Univex International, Inc., a Colorado corporation. That correction cleared up some of the confusion I encountered in the complaint. Still a mystery to me, however, is the identity of plaintiff A. Jay De La Mare. He is listed in the amended complaint's caption and is said to have purchased 60,000 shares of stock for $20,000 in June, 1990, but makes no other appearances in the body of the complaint.[3]

### B. The Allegations of Fraud

Paragraphs 80 through 125 seem to contain the particularized circumstances of fraud that rule 9(b) requires. Although the defendants made specific representations to most of the plaintiffs, there are a number of common themes. For example, the defendants told most of the plaintiffs that IDCI was going public in early to mid-July 1991, that the stock would be traded on the Vancouver stock exchange, and that its value would accordingly skyrocket. They told most plaintiffs that IDCI's sealant was a new discovery, revolutionary and about to be or already patented. Some plaintiffs learned that Sisk and Duggan had previous experience taking companies public, that IDCI had a large customer base and would soon be selling to Wal–Mart and Rustoleum, that the sealant was sold in 16 states, and that a secondary offering was in the wings. I will develop other examples below.

### II. Discussion

### A. The Adequacy of the Amended Complaint

In determining whether the amended complaint adequately pleads the circumstances of fraud under rule 9(b), I am guided by familiar principles of law. A securities complaint must describe the specific representations or omissions which are allegedly fraudulent, where and when the statements were made, the particular defendant who made the misrepresentations, and state the falsity of the representation or the circumstances which make the omission fraudulent. *Trussel v. United Underwriters, Ltd.*, 228 F.Supp. 757, 774 (D.Colo. 1964); *Seattle–First National Bank v. Carlstedt*, 800 F.2d 1008, 1010 (10th Cir. 1986); *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir.1992). The point of the rule is to provide enough notice to each defendant of the misrepresentations the defendant made so that he can answer and otherwise defend himself. *Deutsch v. Flannery*, 823 F.2d 1361 (9th Cir.1987). The rule does not require extensive factual pleading. As an exception to rule eight's requirement that pleadings should be simple, concise and direct, rule 9 is read restrictively, not expansively. 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1297 at 615 (2d ed. 1990). It does not require plaintiffs to plead extensive facts. It only requires that plaintiffs plead the circumstances of the fraud.

---

**3.** I am reminded of T.S. Eliot's poem, The Love Song of J. Alfred Prufrock (1917):

No! I am not Prince Hamlet, nor was meant to be;
Am an attendant lord, one that will do
To swell a progress, start a scene or two,
Advise the prince; no doubt an easy tool,
Deferential, glad to be of use,
Politic, cautious, and meticulous;
Full of high sentence, and a bit obtuse....

### 1. Sisk, Duggan & Urben

■ I find that plaintiffs have not met the rule's requirements as to defendants Sisk, Duggan and Urben. The amended complaint's averments do not state the necessary elements of any federal securities fraud claim. First, I cannot tell who made the specific representations to the individual plaintiffs. More often than not, the amended complaint simply refers to "the defendants," without further elaboration. See Amended Complaint ¶¶ 80, 85, 87, 94, 97, 99, 101, 105. This is particularly troubling to me since I have not found any instances of misrepresentations attributed to defendant Don Urben. Second, the amended complaint does not specify when, where, and how the defendants made the various representations to the plaintiffs. See, for example, ¶ 89. Third, and most significant, the amended complaint does not tell me which representations were materially false.

I also note the following specific examples of inadequate and insufficient allegations. Paragraph 80 of the complaint provides as follows:

> Plaintiff Gardner purchased 30,000 shares of IDCI stock in June of 1989, for $5,000 or $.17/share. He relied [sic] on conversations with the Defendants and was told:
> a. they would be applying for a patent.
> b. Sisk and Duggan said they had previously taken a Company public and everyone made money from the stock. Also, they had been in other successful business ventures.
> c. as an early investor I [sic] could buy stock at $.17/share.

These allegations do not tell the defendants which of them told Gardner "they would be applying for a patent." The allegations do not tell the defendants when the representations were made. Nor they do say what about the allegations was false—that is, that the defendants did not apply for a

patent, that Sisk and Duggan had not had prior business experience, or that Gardner was not able as an early investor to buy stock at $.17 per share. Indeed, paragraphs 81 and 82 specifically tell me that Gardner later did buy 73,200 shares of IDCO for $.16 or $.17 per share.[4]

Paragraph 90 of the amended complaint provides as follows:

> When Plaintiff Samules made his first purchase in early 1991 of $30,000 for 60,000 shares or $.50/share. [sic] He [sic] relied on the following:
> a. The product seemed to be a good product.
> b. He mailed in a check [sic]
> c. Received a stock certificate in the mail.
> d. Rex Gardner told me [sic] about the product.

Once again, there are no allegations of falsity here, and no references to any individual defendant, and the allegations give no clue as to the circumstances of the fraud.

Paragraph 92 of the complaint provides as follows:

> Plaintiff Thalman spoke to Frank who suggested an investment in the Company would be a great idea. Plaintiff made her first purchase of 9,500 shares for $4,750.00 or $.50/share. Thalman relied on the following information:
> a. This is really a hot deal;
> b. Company has a patent;
> c. This is a Revolutionary Sealant;
> d. The stock would go wild;
> e. The Utah Dept of Highways was testing the product;
> f. Stock would be on a National Exchange in 30 to 60 days and
> g. Stock would go to $2.00/share.

Again, these facts state no claim for securities fraud. They implicate no named defendant, only a man with the first name "Frank." There is no hint or suggestion that the representations, even if made by

---

**4.** Paragraph 84 of the amended complaint also tells me that Gardner received 100,000 shares of stock in July 1990 from Joe Flood in exchange for a loan of $15,000. I do not see the significance of the paragraph. This sale is not attributable to any of the named defendants, nor was it based on any fraudulent misrepresentation to Gardner by anyone.

one of the defendants, were materially false in any way.

### 2. Cordovano & Wagner

The amended complaint is particularly vague about defendants Cordovano and Wagner ("the professionals"), and their respective professional corporations. It nowhere describes misrepresentations attributable to them. It merely describes their respective roles as accountant and lawyer, and attempts to hold them liable as aiders and abettors under rule 10b–5. Such a theory requires allegations about three specific elements: 1) the existence of a primary violation of the securities laws by another; 2) knowledge of the primary violation by the aider-and-abettor; and 3) substantial assistance by the aider and abettor in achieving the primary violation. *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d at 986.

As found above, the amended complaint does not allege a primary violation of the securities laws. Hence, the aiding and abetting claim against the professionals must be dismissed as well.

### B. Statute of Limitations

■ In addition to the sufficiency of the fraud allegations, the defendants challenge the section 12(1) violation (Count II) on statute of limitations grounds. They assert that plaintiffs have failed to file their complaint within one year of the purchase of the unregistered securities, as 15 U.S.C. § 77m requires. I agree.·

15 U.S.C. § 77m provides that

No action shall be maintained to enforce any liability created under ... section 77*l* (1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section ... 77*l* (1) of this title more than three years after the security was bona fide offered to the public....

I have previously held that § 77m's period of limitations is triggered "when the defendants sold what could be unregistered securities." *Snyder v. Newhard, Cook & Co., Inc.* 764 F.Supp. 612, 618 (D.Colo.1991).

Plaintiffs argue that I should equitably toll the limitation on account of fraudulent concealment on the defendants' part. I disagree. As I noted in *Snyder*, equitable tolling is inapplicable to § 12(1) claims. 764 F.Supp. at 618. Plaintiffs advance no reason why I should rule differently here.

### C. Tender

■ Duggan, Sisk, and Urben say I should also dismiss the section 12 claims because the remedy for such claims is limited to rescission upon tender of the securities. Under the act, a seller of unregistered securities is

liable to the person purchasing such security from him, who may sue ... to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77*l*. They also correctly point out that a plaintiff may choose between recovery of damages and rescission in a claim brought under rule 10b–5, but note that the plaintiffs here have not asked for damages as part of the relief sought. See Amended Complaint at ¶ 160. Thus, tender at some point in time is a technical requirement of the statute.

·I disagree, however, with the notion that tender must be made in every case upon the filing of a complaint. The statute itself is silent as to the timing of tender. *Adair v. Hunt International Resources Group Corp.*, 526 F.Supp. 736 (N.D.Ill.1981). Furthermore, I am not convinced that tender is required where it will not return the parties to the status quo ante. According to the plaintiffs, IDCI is without funds and bankrupt. What then, they ask, would tender accomplish?

In any other circumstances, I would either allow, in the absence of prejudice to the defendants, plaintiffs to amend the complaint to include tender, or read the request for rescission in ¶ 160 of the amended complaint as an implied offer of tender. See *Wigand v. Flo–Tek, Inc.*, 609 F.2d 1028 (2d Cir.1979); *Stadia Oil & Uranium Co. v. Wheelis*, 251 F.2d 269 (10th

Cir.1957). Here, however, the issue is moot since I dismiss the complaint with prejudice because of the failure to plead fraud with specificity and the failure to plead timely violations of section 12.

### D. The State Claims

I also dismiss the state claims. Despite the allegation that I have jurisdiction in this case pursuant to 28 U.S.C. § 1332, I do not see anything like complete diversity between the parties. Nearly all the parties are residents of Colorado.

### III. Request for Sanctions

All the defendants sought sanctions in their motions to dismiss. I previously advised plaintiffs that they need not address the requests for sanctions until after I had ruled on the motions to dismiss. I now direct plaintiffs to respond to the requests for sanctions within twenty days of the date of this order. Defendants may file a reply to the response within ten days after receipt of the response.