John A. SANDERSON and Norma J. Sanderson for themselves and for a certain class of persons similarly situated, Plaintiffs,

v.

Otto E. ROETHENMUND, individually, R. Leslie Deak, individually, the Estate of Nicholas L. Deak, deceased, and R. Leslie Deak, Liselotte M. Deak in their capacity as co-executors of the Will of Nicholas L. Deak, deceased, Defendants.

No. 85 Civ. 9527 (KC).

United States District Court,
S.D. New York.

March 22, 1988.

Duncan N. Darrow, Anderson Russell Kill & Olick, New York City, for plaintiffs.

Julian W. Friedman, Stillman Friedman & Swan, P.C., and Robert J. Anello, Obermaier Morvillo & Abramowitz, P.C., New York City, for defendants.

## OPINION AND ORDER

CONBOY, District Judge:

This is an action brought by investors in international certificates of deposit issued by a corporation with which the defendants were associated. Plaintiffs claim that they, and other purchasers of the certificates, are the victims of fraud perpetrated

by the defendants in the marketing of the certificates in question.

Defendants Otto Roethenmund, Leslie Deak, Liselotte M. Deak, and the Estate of Nicholas Deak move to dismiss the amended complaint pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. The defendants contend that the amended complaint fails to plead fraud with sufficient particularity; that the causes of action based on Section 12 of the Securities Act are barred by the statute of limitations; and that this court lacks subject matter jurisdiction because the instruments in question are not securities under the Securities Act of 1933 and the Securities Exchange Act of 1934. The court dismissed the original complaint, with leave to amend, on September 23, 1986.

### FACTS

On various occasions during 1981 and 1982, the Sandersons invested their money in international certificates of deposit (ICDs) which were issued and sold by Deak–Perera International Banking Corporation ("Depebanco"), a subsidiary of Deak & Co. At the maturity date of the ICDs, the investment was rolled over into other ICDs issued and sold by Depebanco. Thereafter, plaintiffs maintained their ICD investments through a series of additional rollover transactions, the last of which occurred on an unspecified date "just prior" to December 6, 1984. Between January 1, 1978 and December 6, 1984, ICDs similar to those purchased by plaintiffs were sold to more than 1,000 other persons, and the Sandersons claim that they are appropriate representatives of a class consisting of all ICD purchasers whose certificates remained outstanding on December 6, 1984.[1]

The complaint alleges that the defendants perpetrated a fraud on ICD purchasers by failing to tell purchasers that their money would be used to subsidize financial losses sustained by other Deak companies; diverting Depebanco funds to themselves;

continuing the ICD sales despite the protests of other corporate officials and a warning from outside counsel; and failing to have a registration statement in effect. Based on the foregoing allegations, the complaint asserts claims under §§ 12(1), 12(2) and 17 of the Securities Act of 1933, § 10(b) of the Securities Exchange Act of 1934, S.E.C. Rule 10b–5, the Connecticut Uniform Securities Act, and common law.

### ANALYSIS

#### I. Jurisdiction

■ Defendants contend that the court lacks subject matter jurisdiction because the ICDs are not securities under the federal securities laws. The court adopts the reasoning of the Securities and Exchange Commission[2] and finds that the ICDs are securities within the meaning of the federal securities laws. The Securities Act of 1933 and the Securities Exchange Act of 1934 define "security" as including any "note ... unless the context otherwise requires." An ICD is a certificate that evidences a promise to pay a specified sum of principal and interest to the payee at a specified time and, as such, appears to meet the description of a note. In *Exchange National Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1137–38 (2d Cir.1976), the Court of Appeals, interpreting the "context" clauses of the 1933 and 1934 Acts, excluded certain types of notes, and notes resembling them, from the coverage of the securities laws because the context did not require the protection of the securities laws. Essentially, *Touche Ross* excluded notes that resemble commercial loans, as opposed to investment notes, from the coverage of the securities laws.

In *SEC v. American Board of Trade*, 751 F.2d 529, 538–40 (2d Cir.1984) the Court of Appeals held that standardized notes sold to the public in denominations of $250, $500, and $1,000 which matured in

---

1. On December 6, 1984, Depebanco and Deak & Co. filed petitions in bankruptcy for reorganization pursuant to Chapter 11.

2. At the request of Judge Weinfeld, to whom this case was initially assigned, the Securities and Exchange Commission submitted an amicus brief on the question of whether ICDs are securities.

three or six months were securities. The Court sees no significant difference between the notes in *American Board of Trade* and the ICDs in the instant case.[3]

## II. Rule 9(b).

In dismissing the original complaint pursuant to Rule 9(b), the Court stated as follows to plaintiffs' counsel:

It seems to me that under the cases you have not complied with Rule 9, and I think you really ought to redraft your complaint with specification of the acts of omission or commission, the fraudulent acts upon which you rely, which defendants you attribute them to, the nature of the fraudulent conduct, [and] when it occurred.

■ Despite a substantial increase in the length of the complaint, it still fails to specify the fraud with the particularity required under Rule 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." As interpreted in this Circuit, the rule requires that a fraud complaint identify "1) precisely what statements were made 2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) the same 3) the content of such statements and the manner in which they misled the plaintiff and 4) what the defendant obtained as a consequence of the fraud." *Posner v. Coopers & Lybrand*, 92 F.R.D. 765, 769 (S.D.N.Y.1981), *aff'd*, 697 F.2d 296 (2d Cir. 1982). A fraud complaint must also apprise each individual defendant of the nature of his or her participation in the fraud.

*O'Connor & Assoc. v. Dean Witter Reynolds, Inc.*, 529 F.Supp. 1179, 1197 (S.D.N.Y. 1981).

■ Defendants contend that the complaint is deficient in three ways. First, the complaint fails to identify the time, place, and maker of the statements which were materially misleading. Second, the complaint fails to delineate the role each individual played in the fraud. Finally, the complaint fails to state the factual basis for plaintiffs' fraud allegations.

Although the complaint describes, at length, the material information which the defendants allegedly failed to disclose, the complaint contains a paucity of information about the fraud itself. Specifically, it fails to identify the Deak representative who sold them the certificates, the time or times that the sales were made, and the communications or representations which were misleading by virtue of omissions.

In *Bresson v. Thomson McKinnon Securities, Inc.*, [1986–87 Transfer Binder] Fed. Sec.L.Rep. (CCH) para. 92,855 at 94,157 (S.D.N.Y. July 22, 1986), the plaintiffs sued a brokerage firm based on misrepresentations and omissions made by the defendant's employees in connection with the sale of limited partnership interests. Like the present complaint, the complaint in *Bresson* specified the misrepresentations and omissions relied on but failed to allege precisely what statements were made, and the time and place of their making. In addition, although the amended complaint acknowledges that Thomson McKinnon "maintains offices throughout the United States and employs thousands of account executives ...," it does not

---

**3.** Defendants' principal argument is that *Marine Bank v. Weaver*, 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982), dictates application of the so called *Howey* test to determine if the ICDs are securities. Defendants' argue that the SEC "misses the point of [*Marine Bank*] entirely" but it is defendants who misconstrue that case. There, the Supreme Court found that the important difference between the bank certificates of deposit in question and other long-term debt obligations, which are commonly found to be securities, was that holders of the CDs were protected by the comprehensive set of regulations governing the banking industry and thus did not need the protection of the securities laws. *Marine Bank* simply does not hold that

unregulated CDs must be analyzed under the *Howey* test.

Defendants also misread *Gary Plastic Packaging v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230 (2d Cir.1985). In *Gary*, the Court of Appeals applied the *Howey* test to an *investment program* in certificates of deposit and concluded that the CD program was a security. The underlying certificates of deposit were issued by regulated and insured domestic banks and were clearly not securities under *Marine Bank*. Neither *Marine Bank* nor *Gary Plastic* support defendants' conclusion that the *Howey* test must be applied to determine if ICDs are securities.

identify the Thomson McKinnon employee or employees who made the alleged misrepresentations or omissions. The plaintiffs' failure to specify these account executives or employees prejudices the defendants' ability to respond adequately to the complaint.

As in *Bresson*, the present complaint does not give the defendants fair notice of the claims against them. Because the plaintiffs have been put on notice of the deficiencies in the original complaint and have failed to correct them, dismissal with prejudice is proper. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir.1978). There, the Circuit Court emphasized that plaintiff had been put on the "plainest notice" by Judge Lasker after the filing of the first complaint. The cautionary advice of Judge Weinfeld, set forth above, was no less plain. The plaintiffs did not comply with his instructions.[4] Because plaintiffs' failure to specify the immediate circumstances of the fraud is fatal to their fraud allegations, the Court need not consider whether the complaint also fails to deliniate adequately the role of each individual defendant in the fraud.

### III. The Statutes of Limitations

■ An action under § 12(1) must be brought within one year after the violation upon which it is based or three years after the security was first offered to the public, whichever comes first. *Campito v. McManus, Longe, Brockwehl, Inc.*, 470 F.Supp. 986, 995 (N.D.N.Y.1979). Since the last sale of ICDs to plaintiffs occurred more than a year before the commencement of this suit[5], plaintiffs' § 12(1) claims are

time-barred. Although the statute of limitations may be tolled where the defendant actively conceals the violation, *see Houlihan v. Anderson–Stokes, Inc.*, 434 F.Supp. 1319 (D.D.C.1977), mere ignorance of the violation on the part of the plaintiff does not toll the limitations period. *Cook v. Avien, Inc.*, 573 F.2d 685, 691 (1st Cir. 1978). Plaintiffs have alleged, at best, that the defendants would have told them, *if asked*, that no registration statement was required. That allegation is insufficient to invoke the doctrine of equitable tolling.[6]

An action under § 12(2) must be brought within "one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought ... more than three years after the sale." To satisfy the statute, plaintiffs must plead facts demonstrating the efforts they made to discover the alleged fraud and the reasons why they could not have done so sooner. *See Kozonasky v. Sears Roebuck & Co.*, [Current Transfer Binder] Fed.Sec. L.Rep. (CCH) para. 92, 967 (S.D.N.Y. October 23, 1986). Plaintiffs have pled no facts showing that defendants actively misled them or that plaintiffs made even the slightest effort to discover the alleged fraud.[7]

■ The claims under § 12(2) are also barred by the 3 year statute of limitations to the extent that they are based on purchases made before December 5, 1982. To avoid the effect of the 3 year statute, plaintiffs claim that each rollover was a separate sale of a security which commenced

---

4. By their own admission, plaintiffs have conducted extensive discovery "regarding the causes of the collapse of the Deak companies." (Am.Compl. paras. 72–76).

5. As discussed in greater detail *infra*, the Court concludes that the last sale of ICDs to the Sandersons occurred in 1982. Even if the Court accepted plaintiffs' contention that the last rollover was a sale, their claim would still be barred by the one year statute of limitations. Although the amended complaint obscures the date of the last rollover, plaintiffs' memorandum in opposition to the motion to dismiss fixes the date as October 15, 1984—more than one year before the filing of the original complaint.

6. Plaintiffs never allege that representations were made to them that the ICDs did not require registration or that a registration statement was actually filed. If saying nothing were considered concealment, the statute of limitations would be tolled in almost every case involving a violation of section 12(1) and the one year statute of limitations would be rendered meaningless.

7. Allegations of fraudulent concealment, like all fraud allegations, must be stated with particularity. *Kozonasky, supra*, at 94, 753. Plaintiffs' failure to identify the Deak representative who sold them the certificates and the incomplete communications made by him is fatal to their allegations of fraudulent concealment.

the running of a new three year limitation period.

The Court of Appeals has stated that "[b]efore changes in the rights of a security holder can qualify as the purchase of a new security ... there must be such significant change in the nature of the investment or in the investment risks as to amount to a new investment." *Abrahamson v. Fleschner,* 568 F.2d 862, 868 (2d Cir.1977), *cert. denied,* 436 U.S. 905, 98 S.Ct. 2236, 56 L.Ed.2d 403 (1978). The plaintiffs in *Abrahamson* were limited partners in an investment partnership. They argued that a modification of the partnership agreement constituted the purchase and sale of new securities under Section 10(b) and Rule 10b–5. Although the modification made substantial changes in the management and structure of the partnership, the Court held that the modification did not constitute the sale of new securities.

In *Freschi v. Grand Coal Venture,* 551 F.Supp. 1220 (S.D.N.Y.1982), the plaintiff invested in a joint venture in coal-mining leases. The plaintiff argued that the venture's decision to exchange a lease on unproductive property in one state for a lease on property in another constituted the purchase of a new security. The court rejected the plaintiffs argument because the original agreement provided for the substitution of property.

If anything, an ICD rollover in the present case is a less significant change in the nature of the investment than the partnership modification in *Abrahamson* and the land substitution in *Freschi.* In substance, each rollover represented merely a periodic interest rate and maturity date adjustment to a single security.[8] It also appears that, as in *Freschi,* the alleged change in the nature of the investment was something contemplated by the Sandersons when they made the initial purchases. The automatic rollover of one ICD to another was not a significant change in the nature

of the Sandersons' investment and, thus, did not constitute a new sale of a security.

In sum, defendants' motion to dismiss the complaint for failure to plead fraud with particularity and, with respect to the claims under § 12 of the Securities Act, for failure to establish compliance with the statute of limitations is granted.

Under the authority of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the remaining state law claims are dismissed without prejudice.

SO ORDERED.

---

8. On a motion pursuant to Rule 12(b)(6), "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." 2A Moore's Federal Practice, para. 12.07. The amended complaint is replete with legal conclusions including the "allegation" that each rollover was based upon "new and independent investment decisions." Despite this legal conclusion, plaintiffs do not deny that the rollovers occurred automatically and did not require any affirmative approval on their part.