Bernardo BLATT, etc., et al., Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, et al., Defendants.

Civil Action No. 94–2348.

United States District Court, D. New Jersey.

Feb. 23, 1996.

Michael L. Kirby, Jeffrey P. Lendrum, Post Kirby Noonan & Sweat, San Diego, CA, Jared B. Stamell, Stamell, Tabacco & Schager, New York City, Thomas G. Shapiro, Shapiro, Grace, Haber & Urmy, Boston, MA, Christopher Lovell, New York City, and John Maher, Summit, NJ, for Plaintiffs.

Brian F. Amery, David J. Libowsky, Bressler, Amery & Ross, Morristown, NJ, James N. Benedict, Mark Holland, Lori A. Martin, James F. Moyle, Christopher J. O'Rourke, Rogers & Wells, New York City, and Lawrence W. Newman, Grant Hanessian, Baker & McKenzie, New York City, for Defendants.

## OPINION

WOLIN, District Judge.

This matter is before the Court upon Defendants' Motion to Dismiss the Second Amended Class Action Complaint (hereinafter the "SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. This motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant in part and deny in part defendants' Motion to Dismiss.

## BACKGROUND

### A. Introduction

The dispute in this case centers on how well defendants disclosed the risks inherent in two mutual funds they were selling and whether the mutual funds only assumed the risks which the associated prospectuses disclosed they would assume. Shareholders in the two mutual funds allege that defendants, in violation of federal securities laws and state laws, misrepresented and failed to disclose the risks of investing in those funds and failed to register one of the funds with the Securities Exchange Commission.

### B. The Parties

#### 1. The Plaintiffs

Plaintiffs Blatt, Biderman, Semalsy, Inc., Myr–Ale Corp., Gold, Inc., Galias Fray, Inc., Dominguez, M. Rubin & Sons, Ltd., and Bondy purchased shares of the Merrill Lynch Short–Term World Income Portfolio (hereinafter "World Fund") between June 1990 and August 1991, and seek to represent a class of investors who purchased World Fund shares between June 9, 1990 and October 31, 1992. None of these individuals or companies is a citizen or resident of the United States.

Plaintiffs Hatkoff and Field purchased shares of Merrill Lynch Short–Term Global Income Fund, Inc. (hereinafter the "Global Fund") in August 1991, and July 1992, respectively, and they seek to represent a class of investors who purchased the Global Fund shares between September 15, 1990, and October 31, 1992. Both Hatkoff and Field are citizens and residents of the United States.

#### 2. The Defendants

The defendants are subsidiaries or affiliates, or employees of Merrill Lynch & Co., a publicly owned holding company that, through its subsidiaries and affiliates, provides investment, financing, insurance and related services.

Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated (hereinafter "MLPF & S"), a subsidiary of Merrill Lynch & Co., is a securities broker-dealer which sold shares of the funds.

Defendant Merrill Lynch Investment Management, Inc., doing business as Merrill Lynch Asset Management (hereinafter "MLAM"), a subsidiary of Merrill Lynch & Co., was the investment advisor and portfolio manager for the funds.

Defendant Merrill Lynch Funds Distributor, Inc. (hereinafter "MLFD"), a subsidiary of Merrill Lynch & Co., was the distributor of the Global Fund and was involved in the promotion and sale of the World Fund shares.

Defendant David B. Walter (hereinafter "Walter") was the Vice President of Global Fund, and Vice President and Portfolio Manager of MLAM. Walter was actively involved in the marketing of the funds. .

Defendant World Fund is a mutual fund incorporated as an "exempted company" under the laws of the Cayman Islands; and as such, the World Fund did not register with the Securities Exchange Commission (hereinafter "SEC"). World Fund was the issuer of World Fund securities.

Defendant Global Fund is a mutual fund registered with the SEC under the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 *et seq.* (hereinafter the "Investment Company Act"). Global Fund was the issuer of Global Fund securities

### C. The Offering

In 1990, the defendants created two essentially identical funds, the Global Fund and the World Fund (collectively the "Funds"). In public offerings commencing in August 1990, MLPF & S sold shares in the Funds to its retail clients. Global Fund shares were sold to U.S. citizens and World Fund shares were sold to foreigners. The proceeds from these sales, net of MLPF & S's sales commissions and management fees, were paid to MLAM. MLAM, in turn, invested the Funds' monies. The aggregate of MLAM's fees are alleged to have exceeded $200 million.

The Funds were Marketed through prospectuses, sales brochures, and marketing guides. The prospectuses stated that the Funds sought "as high a level of current income as is consistent with prudent investment management" and were "designed for the investor who seeks a higher yield than a money market fund and less fluctuation in net asset value than a longer-term global bond fund." (SAC ¶ 63(a), (b).) The prospectuses also stated that the portfolios were to be composed of "high quality debt securities" not to exceed three years. (SAC ¶ 63(c).)

The prospectuses also disclosed some of the risks associated with investing in the Funds. The Global Fund prospectus, for example, stated:

> [T]he Fund will invest its assets in debt securities denominated in at least three different currencies, including the United States dollar. At times, the Fund may seek to hedge its portfolio against currency risks through the use of futures, options on futures and currency transactions. Investment on a global basis involves special considerations. See 'Special and Risk Considerations.' There can be no assurance that the investment objective of the Fund will be realized.

(Compl.Ex. 4 at 1.) The World Fund prospectus contained the same warning. (*See* Compl.Ex. 2 at 4.) Both prospectuses further warned that the net asset value of the Funds' shares would be affected by changes in the general level of interest rates, and that the Funds may engage in various strategies, utilizing options, futures and currency transactions, to hedge the portfolios against interest rate and currency risks. (Compl.Ex. 4 at 7, 11; Compl.Ex. 2 at 6, 7.) With respect to the various hedging strategies, the prospectuses warned of the risks associated with options, futures and currency transactions. Specifically, the prospectuses warned that "[u]tilization of futures transactions involves the risk of imperfect correlation in movements in the price of futures contracts and movements in the price of the securities and currencies which are the subject of the hedge." (Compl.Ex. 4 at 16; *see* Ex. 2 at 9.) Therefore, "[i]f the price of the futures contract moves more or less than the price of the security or currency, the Fund[s] will experience a gain or loss which will not be completely offset by movements in the price of the debt securities which are the subject of the hedge." (*Id.*)

Finally, the prospectuses also disclosed that the costs associated with transactions in foreign securities are generally higher than costs associated with transactions in United States securities, and that the operating expense ratio of the Funds were expected to be higher than that of an investment company investing exclusively in United States securities. (Compl.Ex. 4 at 6; Compl.Ex. 2 at 3.)

With respect to the World Fund, Merrill Lynch represented to the SEC that the World Fund would not do business or be sold in the United States.

### D. The Alleged Misrepresentations and Omissions

Plaintiffs posit that the Funds had no prospects for success from their inception and served no other economic purpose than to provide the defendants with millions of dollars of profit in sales proceeds, fees, and other commissions, and that in order to cover their high fees defendants would engage in risky speculative positions in derivative securities. Plaintiffs further allege that in order to induce investors defendants materially misrepresented the true risks associated with investing in the Funds.

In support of this argument, plaintiffs argue that the Funds' when fully hedged against currency risk would only lock in a yield equal to the yield on short-term U.S. Treasuries of comparable maturity, and once the defendants' fees, loads, other charges, and the Funds' transaction costs were deducted, the Funds' yield from a portfolio fully-hedged against currency risk, would be "drastically less than," the yields on riskless, short-term Treasuries. Therefore, the plaintiffs allege that at the time the Funds were sold, the Funds simply did not make any sense as either an investment or as a speculative position. (SAC ¶¶ 59, 60.) As a consequence, plaintiffs further allege that the Funds engaged in speculation to earn higher yields. Indeed, plaintiffs allege that the Funds invested in $1 billion worth of derivative securities thereby subjecting the Funds' assets to substantial risk. Accordingly, plaintiffs conclude that the Funds were unsuitable for risk-adverse investors, and that the prospectuses failed to contain an appropriate warning concerning the risks involved.

Plaintiffs also allege that World Fund shares were regularly solicited and sold in the United States through defendants to non-United States citizens, despite Merrill Lynch's contrary representation to the SEC. (SAC ¶¶ 51–53).

Based on these alleged misrepresentations and omissions described above, plaintiffs assert eight claims in the Second Amended Complaint. Counts one and two of the complaint allege that the defendants failed to register the World Fund and its shares with the SEC in violation of section 7(d) of the Investment Company Act, 15 U.S.C. § 80a–7(d), and section 12(1) of the Securities Act of 1933 (hereinafter the "Securities Act"), 15 U.S.C. § 77l(1). Counts three, four and five assert that the defendants misrepresented and failed to disclose material facts concerning the risks of investing in the Funds, in violation of section 12(2) of the Securities Act, 15 U.S.C. § 77l(2), section 10b of the Securities Exchange Act of 1934, (hereinafter the "Exchange Act"), 15 U.S.C. § 78j(b) (1988), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. Count seven alleges that the Funds deviated from their fundamental investment policy of providing shareholders with as high a level of current income as is consistent with prudent investment management in violation of section 13(a)(3) of the Investment Company Act, 15 U.S.C. § 80–13(a)(3). Counts six and eight allege that the defendants breached their fiduciary and contractual duties, and committed negligence, gross negligence, and common law fraud, in violation of applicable state law.

### E. Defendants Motion to Dismiss

Defendants tell a different story and move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The Defendants argue that the Court must dismiss plaintiffs' federal securities claims because (i) the prospectuses and other materials attached to the complaint sufficiently disclosed the risks that plaintiffs claim were misrepresented and concealed, (ii) the statute of limitations period has expired, and (iii) there are no private rights of action under the Investment Company Act of 1940, 15 U.S.C. 80a–1 *et seq.* In addition, defendants seek dismissal of plain-

tiffs' state law claims for lack of supplemental jurisdiction.

### F. Procedural History

Plaintiffs filed their Original Complaint in the United States District Court for the District of California on June 8, 1993 as a putative class action on behalf of World Fund investors. On September 15, 1993 plaintiffs filed their First Amended Complaint adding the putative plaintiff class of Global Fund investors and adding Global Fund as a defendant. On April 22, 1994, the Southern District of California granted defendants' transfer motion pursuant to 28 U.S.C. § 1404. With leave of the Court, plaintiffs then filed their Second Amended Complaint. The Second Amended Complaint added new federal claims for violations of section 7(d) of the Investment Company Act, 15 U.S.C. § 80a–7(d), section 12(1) of the Securities Act, 15 U.S.C. § 77*l*(1), and section 13(a)(3) of the Investment Company Act, 15 U.S.C. § 80–13(a)(3). In addition, the Second Amended Complaint added defendant, David B. Walter, Vice President of Global Fund, and Vice President and Portfolio Manager of MLAM.

### DISCUSSION

### A. Motion to Dismiss

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all allegations in the complaint, and provide the plaintiff with the benefit of all inferences which fairly may be drawn therefrom. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A complaint cannot be dismissed unless the court is certain that no set of facts can be proved that would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Generally, courts limit their consideration to the facts alleged in the complaint, exhibits attached thereto and matters of public record. *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). "[A] court may[, however, also] consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* In the instant motion, both parties, in support of their respective positions, have submitted materials beyond the complaint, which the Court has considered and utilized in reaching the decision that follows.[1]

### B. Plaintiffs' Non-registration Claims

#### 1. Investment Company Act Section 7(d)

Section 7(d) of the Investment Company Act prohibits any investment company not organized or otherwise created under the laws of the United States, or of a State to use the means of interstate commerce, directly or indirectly, to issue its securities, unless such investment company is authorized by the SEC to register and does register with the SEC as provided by section 8 of the Investment Company Act.[2] 15 U.S.C. § 80a–7(d).

Plaintiffs contend that since World Fund was created under the laws of the Cayman Islands, made use of the means of interstate commerce in issuing its securities, and is not registered under section 8 of the Investment Company Act,[3] World Fund has violated section 7(d) of the Investment Company Act.

Defendants, in response, first argue that there is no private right of action under section 7(d) of the Investment Company Act. Defendants base this argument on the

---

**1.** For example, the defendants included as an exhibit to an accompanying affidavit the Global Fund's publicly filed January 31, 1992 Quarterly Report, which plaintiffs did not include as an exhibit to their complaint.

**2.** The definition of an investment company under section 3(a) of the Investment Company Act includes any issuer which "is engaged or holds itself out as being engaged primarily, or proposes to engage primarily, in the business of investing, reinvesting, owning, holding or trading in securi-

ties and owns or proposes to acquire investment securities having a value exceeding 40 percentum of the value of such issuer's total assets ..." 15 U.S.C. § 80a–3 (1981 & 1995 Supp.).

**3.** World Fund neither filed an application with the SEC, for an order permitting World Fund to register as an investment company, nor registered with the SEC as an investment company pursuant to the Investment Company Act.

ground that section 7(d) does not grant an express cause of action to civil litigants and, therefore, Congress did not intend for federal courts to imply a private right of action under that section.

■ The Court's inquiry of whether a private right of action exists under the Investment Company Act begins with the text of the statute. *Central Bank of Denver v. First Interstate Bank of Denver,* — U.S. —, —, 114 S.Ct. 1439, 1446, 128 L.Ed.2d 119 (1994) (citations omitted).

Section 47 of the Investment Company Act provides that "[a] contract that is made, or whose performance involves a violation of this subchapter, is unenforceable by either party," 15 U.S.C. § 80a–46(b)(1), and that to the extent such a contract has been performed "a court may not deny rescission at the insistence of any party unless such court finds that under the circumstances denial of rescission would produce a more equitable result than its grant and would be inconsistent with the purposes of this subchapter." 15 U.S.C. § 80a–46(b)(2). Section 44 of the Investment Company Act further provides that the district courts shall have jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of" the Investment Company Act. 15 U.S.C. § 80a–43.

Under sections 47 and 44, therefore, a plaintiff can seek relief, either rescission or damages, by showing a violation of some other section of the Investment Company Act.

This reading of the Investment Company Act is in accord with the Supreme Court's decision in *Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). *Transamerica* addressed whether section 215 of the Investment Advisors Act of 1940, 15 U.S.C. § 80b–15, implied a private right of action for damages or other relief in favor of persons aggrieved by those who have violated that act. *Id.* at 13, 100 S.Ct. at 243. Based on section 215, which like section 47 of the Investment Company Act provides that a contract whose formation or performance would violate the act is void, 15 U.S.C. § 80b–15, the Supreme Court concluded that the Investment Advisors Act implies a right to "specific and limited" relief to have the contract declared void, to have the contract rescinded or to have the contract's continued operation enjoined.[4] *Id.* at 18–19, 100 S.Ct. at 246–47.

■ Based on the language of the Investment Company Act and the Supreme Court's decision in *Transamerica,* the Court finds that a private right of action exists under section 7(d) of the Investment Company Act.

The Court notes that this holding is consistent with the many courts that have implied a private right of action under the Investment Company Act.[5] *See, e.g., Bancroft*

4. In contrast with the Investment Company Act, the Supreme Court also concluded that the Investment Advisors Act did not create a private right of action for damages. Despite that conclusion, the Investment Company Act does allow a private right of action for damages on the grounds that the Investment Company Act is readily distinguishable under its jurisdictional grant, to wit, the Investment Advisors Act's jurisdictional grant, section 214, was limited to "suits in equity," 15 U.S.C. § 80b–14 (1976), whereas, the Investment Company Act's jurisdictional grant, section 44, covers "all suits in equity and actions at law," 15 U.S.C. § 80a–43 (1976). *See Fogel v. Chestnutt,* 668 F.2d 100, 109–10 (2d Cir.1981) (distinguishing between implied causes of action under the Investment Company Act and the Investment Advisors Act based upon their respective jurisdictional grants), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982).

In 1990 Congress amended section 214 to extend jurisdiction to "all suits in equity and actions at law." 15 U.S.C. § 80b–14 (1995 Supp.).

5. Defendants argue that the Supreme Court's holding in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* — U.S. —, —— ——, 114 S.Ct. 1439, 1444–48, 128 L.Ed.2d 119 (1994), undermines the reasoning by which the courts have recognized an implied right of action under the Investment Company Act. While *Central Bank* certainly reformulated the calculus to be used in ascertaining whether Congress intended to provide, either expressly or by implication, a private cause of action, the Supreme Court did not hold that all aspects of the interpretive process previously used by courts construing the Investment Company Act was devoid of any merit. Moreover, unlike the question presented in *Central Bank,* here the statutory text of the Investment Company Act supports the implied private right of action. *See also Fogel,* 668 F.2d at 109–110 (analyzing the Investment

*Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.*, 825 F.2d 731 (3d Cir.1987) (recognizing an implied cause of action under section 12(d) of the Investment Company Act); *Lessler v. Little*, 857 F.2d 866, 872–73 (1st Cir.1988) (collecting cases sustaining the availability of private causes of action under the Investment Company Act; recognizing an implied right of action under section 17(a)(2) of the Investment Company Act), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1130, 103 L.Ed.2d 192 (1989); *Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir.1981) (collecting cases sustaining the availability of a private cause of action under the Investment Company Act; recognizing an implied cause of action under section 36(a) of the Investment Company Act), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). With respect to section 7 of the Investment Company Act, the line of cases recognizing an implied right of action goes back almost forty years. *See, e.g., Carr v. Equistar Offshore, Ltd.*, 1995 WL 562178 (S.D.N.Y.); *Krome v. Merrill Lynch & Co., Inc.*, 637 F.Supp. 910 (S.D.N.Y.1986); *Herpich v. Wallace*, 430 F.2d 792, 813–16 (5th Cir.1970); *Brown v. Bullock*, 194 F.Supp. 207, 221 (S.D.N.Y.), *aff'd*, 294 F.2d 415 (2d Cir.1961) (en banc); *see also Valles Salgado v. Piedmont Capital Corp.*, 452 F.Supp. 853, 859 (D.P.R.1978) (implied private right of action found, but conduct alleged did not fall under the prohibition of section 7); *Schwartz v. Bowman*, 156 F.Supp. 361, 362–64 (S.D.N.Y.1957), *appeal dismissed sub nom., Schwartz v. Eaton*, 264 F.2d 195 (2d Cir. 1959) (dismissal denied in an action for injunctive relief and damages for failure to register under section 7); *Cogan v. Johnston*, 162 F.Supp. 907 (S.D.N.Y.1958) (dismissal denied in an action for injunctive relief for violation of section 7).

■ In sum, this Court is satisfied that the plain language of sections 47 and 44 evinces Congress' intent to provide a private remedy under section 7(d) of the Investment Company Act.[6]

Defendants alternatively argue that the statute of limitations period applicable to claims brought under section 7(d) of the Investment Company Act has expired. Plaintiffs, in response, contend (i) that the duty to register is continuing, and, therefore, since World Fund has never registered, the statute of limitations period has not yet begun to run; and (ii) that the triggering of the limitations period is tolled until discovery of the alleged violation.

■ In determining whether plaintiffs' section 7(d) claims are seasonable, the Court must first determine when these claims were commenced. Plaintiffs argue, relying on the relation-back doctrine of Federal Rule of Civil Procedure Rule 15(c), that the filing of the Original Complaint is the relevant measuring date for determining whether their section 7(d) claims are timely. The Court agrees.

Under Federal Rule of Civil Procedure Rule 15(c), the filing of the original complaint is the relevant measuring date for determining whether a subsequently filed claim is seasonable where such claim "relates back" to the original complaint. Rule 15(c) provides that:

> An amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the

Company Act's statutory text in identifying an implied cause of action); *Bancroft*, 825 F.2d at 734–35 (relying, in part, on Judge Friendly's analysis in *Fogel*).

**6.** The Court also rejects defendants' argument that the private claims under the Investment Company Act should be dismissed because they duplicate express rights created under the Securities Act and Exchange Act. Section 50 of the Investment Company Act provides, in pertinent part, that "[e]xcept where specific provision is made to the contrary, nothing in this title shall affect ... the rights, obligations, duties, or liabilities of any person under" the Securities Act, the Exchange Act, etc. 15 U.S.C. § 80a–49. Simi-

larly, section 28 of the Exchange Act provides that "[t]he rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or equity." 15 U.S.C. 78bb(a). *Cf. Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (holding that the availability of an expressed remedy under section 11 of the Securities Act did not preclude plaintiff from maintaining an action under section 10b of the Exchange Act). Therefore, the Court concludes that absent indication of Congress' intent to the contrary, concomitant claims under the various federal securities laws are permitted.

amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

Courts have liberally construed Rule 15(c) to allow amendments to relate back to the original pleading provided that the opposing party had notice of the claim and would not be prejudiced by the amendment. *See, e.g., In re Chaus Sec. Litig.,* 801 F.Supp. 1257, 1264 (S.D.N.Y.1992) ("The principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party by the general fact situation alleged in the original pleading.") (citation and quotation marks omitted); *FDIC v. Conner,* 20 F.3d 1376, 1385–86 (5th Cir.1994) ("once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations"); *Fuller v. Marx,* 724 F.2d 717, 720 (8th Cir.1984) (Rule 15(c) is designed to allow the addition of new claims where there is no unfair surprise or prejudice). Therefore, the addition of new theories of recovery predicated on the same factual foundation is permissible under the relation back doctrine of Rule 15(c).

> The fact that an amendment changes the legal theory on which the action was initially brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading.... Indeed, an amendment that states an entirely new claim for relief will relate back as long as it satisfies the test [same conduct, transaction, or occurrence] embodied in the first sentence of Rule 15(c).

6A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1497, at 94–99 (2 ed. 1990) (citations omitted).

Application of the relation back doctrine to this case indicates that plaintiffs' section 7(d) claims first alleged in the Second Amended Complaint relate back to the original pleading pursuant to Rule 15(c). Here the added claims are premised upon the same conduct, the same transaction and the same factual foundation as set forth in the Original Complaint. *Siegel v. Converters Transp., Inc.,* 714 F.2d 213, 216 (2d Cir.1983) (liberally construing Rule 15(c) to find that "[w]hen a suit is filed in a federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be.") (citation omitted). Therefore, the original pleading has provided notice of these asserted claims. Accordingly, plaintiffs' section 7(d) claims are deemed to relate back to the Original Complaint.

Next, in determining whether plaintiffs' section 7(d) claims are time-barred, the Court must determine when the limitations period began to run. Although the Investment Company Act does not expressly provide for private civil actions, federal courts following the rationale articulated in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 361–62, 111 S.Ct. 2773, 2781–82, 115 L.Ed.2d 321 *reh'g denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991), have applied a three year statute of repose, and a one year limit from plaintiff's discovery of the wrong as the applicable statute of limitations to private actions brought under the Investment Company Act. *See, e.g., Merine v. Prudential–Bache Utility Fund, Inc.,* 859 F.Supp. 715, 721–22 (S.D.N.Y.1994) (applying the one year/three year limitations period to a claim under section 20(a) of the Investment Company Act); *In re ML–Lee Acquisition Fund II, L.P. Sec. Litig.,* 848 F.Supp. 527, 550–52 (D.Del.1994) (applying the one year/three year limitations period to claims under sections 17, 36 and 57 of the Investment Company Act); *In re Taxable Municipal Bond Sec. Litig.,* [1992] Fed. Sec.L.Rep. (CCH) ¶ 96,834 at 93, 326–27, 1992 WL 124783 (E.D.La. June 4, 1992) (applying the one year/three year limitations period to a claim under the Investment Company Act).

For nonregistration claims under section 12(1) of the Securities Act, a claim must be brought within one year after the violation upon which it is based and in no event more than three years after the security was bona fide offered to the public. 15 U.S.C. § 77m. Nonregistration claims brought under section

7(d) of the Investment Company Act are of a similar nature as nonregistration claims brought under section 12(1) of the Securities Act; therefore, following the rationale in *Lampf*, the appropriate implied limitations period for claims brought under section 7(d) is the express limitations period provided for nonregistration claims brought under section 12(1).

Accordingly, defendants contend that plaintiffs' nonregistration claims under section 7(d) should be dismissed because those claims were not asserted within one year after the alleged violation. The Court agrees.

■ The Court rejects plaintiffs' argument that World Fund's failure to register with the SEC is a continuing violation, and that, therefore, the statute of limitations has not yet begun to run. To adopt that argument would annul the application of a limitations period for nonregistration claims. Indeed, to consider an investment company's failure to register with the SEC as a continuing violation would ignore the whole purpose behind a statute of limitations and the importance of the policy of repose. *Cf. Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1039 (2d Cir.) (The continuing duty to register under the Investment Advisors Act did not extend the limitations period), *cert. denied*, 506 U.S. 986, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992); *Slagell v. Bontrager*, 616 F.Supp. 634, 636–37 (W.D.Pa.1985), *aff'd*, 791 F.2d 921 (3d Cir.1986) (rejecting the argument that the limitations period does not begin to run until a security is first legally offered to the public).

■ Similarly, the Court rejects plaintiffs' invitation to apply the "discovery rule" to their section 7(d) claims. Plaintiffs assert that the discovery rule applies, because defendants allegedly concealed the scope of their solicitation activity within the United States and misrepresented whether World Fund required registration with the SEC.

■ Under the discovery rule, the limitations period for a claim "begin[s] to run when the claim accrued or upon discovery of the facts constituting the alleged" violation. *Dodds v. Cigna Securities, Inc.*, 12 F.3d 346,

350 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994). That is, "[d]iscovery takes place when plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Kahn*, 970 F.2d at 1042 (construing both the Securities Act and the Exchange Act).

A plain reading of section 13 of the Securities Act, however, indicates the inappropriateness of applying the discovery rule to nonregistration claims. Section 13 employs a discovery rule to commence the running of the limitations period for false registration claims under section 11 of the Securities Act and for antifraud claims under section 12(2) of the Securities Act. Therefore, for claims under either section 11 or section 12(2), the start of the limitations period is flexible and depends on the discovery of the omission or misstatement. For nonregistration claims brought under section 12(1) of the Securities Act, however, section 13 provides that the limitations period commences at the time of the violation. When the two clauses are compared, the language of section 13 excludes application of either the discovery rule or the doctrine of equitable tolling for nonregistration claims under section 12(1).

Notwithstanding the text of section 13, the Court notes that there is a split of authority as to whether the discovery rule and the doctrine of equitable tolling applies to the one year limitation period governing nonregistration claims under section 12(1). *Compare Cook v. Avien, Inc.*, 573 F.2d 685, 691 (1st Cir.1978) (holding "that, under the explicit language of section 13, the limitations period runs from the date of the violation irrespective of whether the plaintiff knew of the violation" or whether information was concealed from the plaintiff); *Gridley v. Cunningham*, 550 F.2d 551, 552–54 (8th Cir. 1977) (same); *Mason v. Marshall*, 412 F.Supp. 294, 299 (N.D.Tex.1974), *aff'd*, 531 F.2d 1274 (5th Cir.1976) (same); *Gardner v. Investors Diversified Capital, Inc.*, 805 F.Supp. 874 (D.Colo.1992) (same); *Snyder v. Newhard, Cook & Co., Inc.*, 764 F.Supp. 612, 618–19 (D.Colo.1991) (same); *Barton v. Peterson*, 733 F.Supp. 1482, 1490 (N.D.Ga.1990)

(same); *Shotto v. Laub,* 635 F.Supp. 835, 838 (D.Md.1986) (same); *McCullough v. Leede Oil & Gas, Inc.,* 617 F.Supp. 384, 387 (W.D.Okla.1985) (same); *Felts v. National Account Systems Assoc., Inc.,* 469 F.Supp. 54, 64 (N.D.Miss.1978); *Ferland v. Orange Groves of Florida, Inc.,* 377 F.Supp. 690, 703 (M.D.Fla.1974); *Shuman v. Sherman,* 356 F.Supp. 911, 912–13 (D.Md.1973)); *with Katz v. Amos Treat & Co.,* 411 F.2d 1046, 1055 (2d Cir.1969) (applying a discovery rule tolling the limitations period applicable to nonregistration claims); *In re Colonial Ltd. Partnership Litig.,* 854 F.Supp. 64, 86 (D.Conn.1994) (finding that equitable tolling may apply to section 12(1) claims); *Sanderson v. Roethenmund,* 682 F.Supp. 205, 208 (S.D.N.Y.1988) (same); *Jones v. Lewis,* 1988 WL 163026, at *2 (D.Kan.1988) (same); *Dyer v. Eastern Trust & Banking Co.,* 336 F.Supp. 890, 901 (D.Me.1971) (same).

In the Third Circuit, this issue was addressed in *Pell v. Weinstein,* where the court dismissed plaintiffs' section 12(1) claims, holding that the "vast majority of cases have concluded that the limitations period runs from the date of the violation regardless of whether the plaintiff knew of the violation." 759 F.Supp. 1107, 1111 (M.D.Pa.1991), *aff'd without opinion,* 961 F.2d 1568 (3d Cir.1992).

■ This Court agrees with *Pell* and the majority rule that the one year limitations period applicable to claims brought under section 12(1) is absolute.[7] And, therefore, by implication that the one year limitations period under section 7(d) is absolute.

The Court notes, moreover, that had Congress intended to subject nonregistration claims to the discovery rule, it could easily have utilized the discovery rule used in the limitations provision applicable to claims un-der sections 11 and 12(2) of the Securities Act. On the contrary, by including a discovery rule limitation for certain classes of claims but omitting it for nonregistration claims, in the very same provision, Congress reflected its intent to prohibit application of the discovery rule to section 12(1) nonregistration claims.

Furthermore, there is little justification for application of the discovery rule outside the fraud-based causes of action. The discovery rule, or any equitable tolling on the basis of fraudulent concealment, is premised on a wrongdoers ability to conceal his violations, however, violations of section 12(1) are easily uncovered, *i.e.,* the seller of securities cannot conceal the fact that the securities he sells are not registered. While he may misrepresent that the securities are properly registered, or that registration is not required, he cannot prevent the purchaser from discovering the true facts. *See, e.g., Snyder,* 764 F.Supp. at 618–19 ("The kind of information needed to inform a section 12(1) claim need not be obtained through discovery") (citation omitted). In the same manner, an investment company cannot conceal the fact that it is unregistered, and while it may misrepresent that it is properly registered, or that registration is not required, it cannot prevent an investor from discovering the true facts as to the lack of or requirement of its registration.

■ Accordingly, since the World Fund plaintiffs purchased their shares between June 1990 and August 1991, and the Original Complaint was filed on June 8, 1993, the Court finds that plaintiffs' claims stemming from World Fund's alleged failure to register with the SEC were not asserted within the

---

7. "In those circuits where the doctrine of equitable tolling of the section 13 period has been held applicable to nonregistration claims, there has been a requirement of relating the fraudulent concealment to the registration of the security in order to toll the statute of limitations with regard to section 12(1) non registration claim." *Reid v. Walsh,* 645 F.Supp. 685, 688 (M.D.La.1986). Furthermore, "[i]n order to invoke the equitable doctrine of fraudulent concealment in response to a Rule 12(b)(6) motion, the complaint must contain allegations which support such a theory." *Zimmer v. Gruntal & Co., Inc.,* 732 F.Supp. 1330, 1335 (W.D.Pa.1989) (citation omitted).

In the case at hand, however, even if the Court was to follow the minority rule and apply the discovery rule or the doctrine of equitable tolling for fraudulent concealment to nonregistration claims, the complaint fails to set forth sufficient allegations supporting the tolling of the limitations period. *See infra* note 8.

one year limitations period and are, therefore, time-barred.[8]

## 2. Securities Act Section 12(1) Claims

Section 12(1) of the Securities Act imposes a liability on any person who offers or sells a security in violation of the registration requirements contained in section 5 of the Securities Act.[9] 15 U.S.C. § 77*l*(1). As stated above, under section 13 of the Securities Act, a section 12(1) claim must be brought "within one year after the violation upon which it is based," and "[i]n no event ... more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m. The limitations period, therefore, runs from the date of the violation, which is the date the unregistered securities were sold.

Defendants challenge plaintiffs' claims under section 12(1), on the ground that plaintiffs failed to file their complaint within one year of the purchase of the unregistered securities. Specifically, defendants contend that since plaintiffs first commenced their securities claims under section 12(1) when filing their Second Amended Complaint in 1995, almost five years after the shares were offered to the public, such claims are barred by the limitations period. To save their claim, plaintiffs contend that under Rule 15(c) these claims relate back to the filing of their original complaint on June 8, 1993, and that the Court should toll the limitations period on account of defendants' alleged fraudulent concealment of World Fund's obligation to register its securities.

Like plaintiffs' nonregistration claims under section 7(d), the Court finds that plaintiffs nonregistration claims under section 12(1) are deemed to relate back to plaintiffs' Original Complaint. Here, as with plaintiffs' section 7(d) claims, the added claims are premised upon the same conduct, the same transaction and the same factual foundation as stated in the Original Complaint. For these claims, therefore, the Original Complaint provided the necessary notice.

Further, as stated above, the one-year limitation period for nonregistration claims brought under section 12(1) focuses on when the violation occurred, therefore, the one year limitation period was triggered when defendants sold what were unregistered securities. It does not matter when plaintiffs learned of this violation. Hence, any argument by plaintiffs that information was concealed from them is irrelevant.

Therefore, since the World Fund plaintiffs purchased their shares between June 1990 and August 1991, and the Original Complaint was filed on June 8, 1993, the Court finds that plaintiffs' section 12(1) claims are barred

---

8. The Court observes that even if the discovery rule was applicable to nonregistration claims, in the case at hand, the same result would obtain. Here, plaintiffs knew where they bought their shares, the circumstances under which they bought them, and that the World Fund was not and would not be registered. The World Fund prospectus expressly informed potential investors that the Fund "is an investment company incorporated as an 'exempted company' under the laws of the Cayman Islands," and that Fund shares "may not be and will not be offered for sale or sold in the United States of America, its territories or possessions." (Compl.Ex. 2 at 1–3.) Furthermore, the prospectus stated that the World Fund "intend[ed] to operate so that it w[ould] not be engaged in a United States trade or business and w[ould] not be required to file United States tax returns." (Compl.Ex. 2 at 20.) Coupling this information with the exercise of reasonable diligence on the part of plaintiffs would have alerted plaintiffs to World Fund's obligation to register and inevitably, of course, to the existence of their alleged claim. *See, e.g., Kress v. Hall–Houston Oil Co.,* No. Civ.A. 92–543, 1993 WL 166274 (D.N.J. May 12, 1993) (under the discovery rule, plaintiffs must set forth "the reason why discovery was not made earlier, and the diligent efforts plaintiffs undertook in making such discovery") (citation and quotation marks omitted); *Snyder,* 764 F.Supp. at 618 (equitable tolling provides that when a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered."). Moreover, as defendants correctly point out, to plead fraudulent concealment, plaintiffs would find themselves in the untenable position of claiming that although the World Fund prospectus stated that its shares would not be sold in the United States, and that plaintiffs themselves purchased their World Fund shares in the United States, they somehow did not discover that the shares were being sold in the United States in violation of sections 12(1) and 7(d), until June 1994.

9. Section 5 prohibits all selling efforts prior to filing a registration statement, and restricts selling efforts and prohibits sales of securities until the registration statement has become effective. 15 U.S.C. § 77e(a)-(c).

by the one year limitations period provided in section 13.

## C. Plaintiffs' Misrepresentation And Nondisclosure Claims

### 1. Securities Act Section 12(2) Claims

Section 12(2) of the Securities Act imposes a liability for material misrepresentations or omissions in connection with the sale or offer for sale of a security. 15 U.S.C. § 77*l*(2). Claims brought pursuant to section 12(2) must be commenced "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence," and in no event "more than three years after the sale." 15 U.S.C. § 77m.

■ A misrepresentation or omission is material, and therefore actionable, if it significantly alters the total mix of information available to investors. *Basic, Inc. v. Levinson*, 485 U.S. 224, 230–32, 108 S.Ct. 978, 982–83, 99 L.Ed.2d 194 (1988). Thus, "the central inquiry for determining materiality is whether defendants representations, taken together and in context, would have mislead a reasonable investor about the nature of the investment." *In re Hyperion Sec. Litig.*, 1995 WL 422480, at *6 (S.D.N.Y.1995) (citations and quotation marks omitted); *see also TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

■ Defendants assert that plaintiffs' section 12(2) claims should be dismissed on two grounds. First, defendants contend that the disclosures made in the prospectuses were sufficient to put a reasonable investor of ordinary intelligence on notice of the Funds' inherent financial risks and the Funds' fee structure, and, therefore, plaintiffs were on inquiry notice of any claims regarding such financial risks or fees more than one year before these claims were filed.

Second, defendants contend that the Funds' prospectuses contained detailed, cautionary disclosures about the risks associated with investing in the Funds and, on that account, the Funds disclosed the material information plaintiffs now allege was misrepresented and omitted. The Court disagrees with both grounds.

The Court is mindful that on a motion to dismiss plaintiffs allegations are deemed to be true. Here, plaintiffs allege that the Funds speculated in purchasing $1 billion of derivative securities. Plaintiffs further allege that, notwithstanding that the Funds were marketed as prudent investments, such speculation was necessary and always intended in order to cover all of the Funds' expenses while providing a return to the investors.

Consequently, while there were warnings concerning the risks associated with net asset fluctuation, investments in indexed notes, foreign exchange, political risks, and higher fees,[10] taking all the facts alleged in the complaint as true and drawing all inferences favorable to the plaintiff, as this Court must, the prospectuses failed to disclose that it would be necessary for the Funds to take speculative positions in derivative securities. On the contrary, the Funds disclosed that derivative securities would only be used to reduce risk by hedging against interest rate and exchange rate risk, or, with respect to indexed obligations, to generate current income.

The Global Fund prospectus, for example, stated:

> THE INVESTMENT OBJECTIVE OF THE FUND IS TO SEEK ... AS HIGH A LEVEL OF CURRENT INCOME AS IS CONSISTENT WITH PRUDENT INVESTMENT MANAGEMENT FROM A GLOBAL PORTFOLIO OF HIGH QUALITY DEBT.... AT TIMES, THE FUND MAY SEEK TO HEDGE ITS PORTFOLIO AGAINST CURRENCY

---

10. For example, the prospectuses warned that the Funds would invest in debt securities denominated in different currencies and that investments on a global basis involved special risks including fluctuations in foreign exchange rates, future foreign and political and economic developments, and the possible imposition of exchange controls or other foreign or United States governmental laws or restrictions applicable to such investments. Furthermore, the prospectuses warned of (i) the risk of net asset fluctuation associated with changes in interest rates and exchange rates, (ii) the risk associated with investing in indexed notes and commercial paper, (iii) the risk associated with the use of derivative securities in executing a hedge, and (iv) the higher operating expenses and costs associated with transactions in foreign currencies.

RISKS AND, TO A LESSER EXTENT, INTEREST RATE RISKS THROUGH THE USE OF OPTIONS ON FUTURES AND CURRENCY TRANSACTIONS.

(Compl.Ex. 4 at 1).

The Global Fund Prospectus also stated "[t]he Fund will purchase such indexed obligations to generate current income or for hedging purposes and will not speculate in such obligations." (*Id.* at 8.)

In response to this alleged misrepresentation and omission, defendants seek shelter behind the "bespeaks caution" doctrine. Under the bespeaks caution doctrine

when an offering document's forecasts, opinions or projections are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim if those statements did not affect the 'total mix' of information the document provided investors. In other words, cautionary language, if sufficient renders the alleged omissions or misrepresentations immaterial as a matter of law.

*Kline v. First Western Government Securities, Inc.,* 24 F.3d 480, 489 (3d Cir.1994) (citing *In re Trump Sec. Litig.,* 7 F.3d 357, 371 (3d Cir.1993)), *cert. denied sub nom., Arvey, Hodes, Costello & Burman v. Kline,* —— U.S. ——, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994). However, "[n]ot just any cautionary language will trigger application of the [bespeaks caution] doctrine. Instead, disclaimers must relate directly to that on which investors claim to have relied." *Kline,* 24 F.3d at 480.

Moreover, "vague or blanket (boilerplate) disclaimer[s] which merely warn[ ] the reader that the investment has risks will ordinarily be inadequate to prevent misinformation. To suffice, the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions in the prospectus which plaintiffs challenge." *In re Trump, Casino Sec. Litig.,* 7 F.3d 357, 371 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994); *Cf. Menowitz v. Brown,* 991 F.2d 36, 42 (2d Cir. 1993) (*per curiam* ) ("[T]he numerous disclosures specifically concerned the very misrepresentations alleged in the complaint, and thus placed plaintiffs on inquiry notice of probable fraud more than one year before they filed their claims.").

Here, there can be no dispute that a reasonable investor who contemplated participation in these Funds would have wanted to know the types of investments that were to be made. But the disclosed warnings did not alert the potential investor to the Funds' alleged speculative nature. Therefore, taking all the facts alleged in the complaint as true, the total mix of information available to plaintiffs did not adequately disclose the Funds financial risks, and, accordingly, made defendants' prospectuses as a whole misleading.

■ Next, the Court examines whether plaintiffs section 12(2) claims are time-barred by the applicable statute of limitation. The discovery necessary to trigger the one year limitations period need not be actual knowledge of the misrepresented or omitted fact. *Dodds,* 12 F.3d at 350; *Manning v. Maloney,* 980 F.2d 722 (3d Cir.1992). Rather, the one year period begins to run once the plaintiff has knowledge of the facts forming the basis of his cause of action which in the exercise of reasonable diligence should have led to the discovery of the fraud. *Tab Partnership v. Grantland Fin. Corp.,* 866 F.Supp. 807, 810 (S.D.N.Y.1994).

However, "[w]hen inquiry notice is asserted by a defendant as the basis for a summary judgement motion, as in the case here, the defendant has the burden of showing that no genuine issue of material fact exists as to whether the plaintiff, exercising reasonable diligence, would have discovered the fraudulent scheme by the dates identified by the defendant." *In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.,* 815 F.Supp. 620, 638 (S.D.N.Y.1993) (citation omitted).

Moreover, "[b]ecause the question of whether a plaintiff exercised reasonable diligence is usually a question of fact for the jury to decide," "it is only in extreme circumstances that summary judgment is appropriate when defendants assert that the action was untimely commenced because inquiry notice was triggered more than a year before the action was brought by the plaintiff." *In re Integrated Resources,* 815 F.Supp. at 638 (citations omitted).

■ Here, plaintiffs argue that the statements in the prospectuses and offering circulars were false and misleading, thereby precluding discovery of the "true" nature of the Funds' financial risk. Plaintiffs further argue that they were not alerted to the true nature of the Funds' investments until defendants sent a letter, on September 24, 1992, contradicting the disclosures contained in the prospectuses and indicating that the Funds were far more riskier than the prospectuses had disclosed. Plaintiffs then filed their section 12(2) claims on June 8, 1993. Defendants, moreover, have not shown that there are no genuine issues of material fact as to these allegations.

Accordingly, since plaintiffs commenced this action on June 8, 1993, which was within one year of their discovery of the alleged fraud and within three years of the Funds sales which began in August of 1990, the Court finds that plaintiffs' section 12(2) claims are timely.

### 2. Exchange Act Section 10b and Rule 10b–5

Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, as promulgated by the SEC, prohibit fraudulent activities in connection with the purchase or sale of any security.[11] *Shapiro v. UJB Financial Corp.*, 964 F.2d 272 (3d Cir.1992), *cert. denied*, 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). Like section 12(2) of the Securities Act, claims brought pursuant to section 10(b) of the Exchange Act and Rule 10b–5 must be commenced "within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 361–62, 111 S.Ct. 2773, 2781–82, 115 L.Ed.2d 321 *reh'g denied*, 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991).

For the reasons set forth above, the Court finds, assuming all of the factual allegations in plaintiffs' complaint are true and drawing all factual inferences in plaintiffs' favor, that the Funds' prospectuses were materially misleading, and that plaintiffs filed their section 10(b) claims within one year of the discovery of the alleged fraud and within three years of the sales of the securities. Accordingly, defendants have failed in their burden to demonstrate that plaintiffs can prove no set of facts in support of their section 10(b) claims.

### D. Plaintiffs' Investment Company Act Section 13(a)(3) Claims

Section 13(a)(3) of the Investment Company Act provides that an investment company shall not, unless authorized by majority vote, deviate from any investment policy recited in the registration statement. 15 U.S.C. § 80a–13(a).

Plaintiffs allege that the defendants caused the Funds to deviate from the investment policies stated in the respective prospectuses. Defendants, however, argue that there is no private right of action under the Investment Company Act and that this claim is untimely. Defendants also assert that these claims are particularly stale to the extent they are asserted against defendant Walter, who was first named as a defendant in the SAC. For the following reasons the Court disagrees with defendants' assertions.

■ As to the availability of a private right of action under the Investment Company Act, the Court notes that for the reasons stated above, a private right of action exists under the Investment Company Act.

■ As to the timeliness of plaintiffs' section 13(a)(3) claims, plaintiffs allege that their section 13(a)(3) claims refer to 1992 deviations from the stated investment policies, and

---

**11.** Promulgated under section 10, Rule 10b–5 proscribes specific conduct as follows:

It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

  (a) To employ any device, scheme, or artifice to defraud,

  (b) To make any untrue statement of a material fact or to omit to state a material fact in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

  (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5.

that it was not until November 7, 1994 that their counsel received an anonymous tip disclosing such deviations. Accordingly, since the SAC is dated January 31, 1995, the Court finds that this claim was brought within one year of its discovery and within three years of the violation.[12]

### E. Plaintiffs' Pendent State Law Claims

Because the Court has found federal question jurisdiction under Counts III–V and VII, plaintiffs' pendent state law claims are properly before this Court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 874 (3d Cir.1992).

### CONCLUSION

For the reasons set forth above, the Court will grant defendants' motion to dismiss counts I and II of plaintiffs' complaint. However, the Court will deny defendants' motion to dismiss counts III–VIII of plaintiffs' complaint.

---

**12.** In the alternative, the Court finds that as to defendants named in the Original Complaint and the First Amended Complaint this claim relates back to those filings under Rule 15(c)(2).